Filed 6/16/21  P. v. Saesee CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOHN AIPIO SAESEE,<br><br>    Defendant and Appellant. | F080018<br><br>(Super. Ct. No. VCF164116A)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Cameron M. Goodman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Hill, P.J., Detjen, J. and Peña, J.

## INTRODUCTION

In 2007, a jury convicted petitioner John Aipio Saesee of first degree murder (Pen. Code,[1] § 187, subd. (a)), with the special circumstances that the murder involved the discharge of a firearm from a motor vehicle (§ 190.2, subd. (a)(21)) and that petitioner intentionally killed the victim while an active participant in a criminal street gang (§ 190.2, subd. (a)(22)).[2] For this offense, petitioner was sentenced to a term of life without the possibility of parole.

In 2019, petitioner filed a petition for resentencing pursuant to section 1170.95. The court summarily denied the petition on the ground that petitioner was the shooter in the murder, a disqualifying factor pursuant to section 1170.95, subdivision (a)(3).

Petitioner appeals from the court's denial of his petition. He argues that the record before the court does not establish that petitioner was the actual shooter. The People do not address this contention and do not assert that petitioner was the actual shooter, but instead assert that petitioner is ineligible for relief because the jury's special circumstance findings establish that petitioner intended to kill the victim, which also is a statutorily disqualifying factor pursuant to section 1170.95, subdivision (a)(3). In response, petitioner contends the record is inadequate to establish that the jury found he had the intent to kill. He therefore contends the matter should be remanded for the court to appoint counsel and render a more informed ruling.

We conclude the jury's special circumstance findings establish that petitioner is ineligible for relief as a matter of law. Accordingly, any error in the court's determination that petitioner was the actual shooter is harmless, as is any error by the

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     Petitioner was convicted of additional offenses and enhancements, as described below.

2.

court in failing to appoint counsel or afford petitioner the other procedures outlined in section 1170.95, subdivision (c).  Accordingly, we affirm.

**FACTUAL AND PROCEDURAL HISTORY[3]**

We previously summarized the facts underlying petitioner's offenses as follows:

> "On May 8, 2006, around 11:30 p.m., Saesee was driving near the residence of 15-year-old C.  She was outside, wearing a red shirt, and a conversation took place between Saesee and her regarding her gang affiliation.  C. denied any affiliation, and Saesee told her she was in 'O.T. territory.'  'O.T.' is gang slang for the criminal street gang Oriental Troop (hereafter O.T.), which identifies with the color blue.  C., who had a friend who had suffered at the hands of that gang, responded 'Fuck O.T.'  Saesee got out of his car and tried to strike at C.  He also showed her a gun and asked her if she lived at that residence.  He then said, 'Watch bitch, when I fucking come back.'  Saesee then drove away.

> "C. became concerned and encouraged her family members to go inside the house.  Shortly thereafter, [Natividad] Viscarra, C.'s sister, was standing near the curb talking to several friends in a vehicle.  Viscarra had her hair in a ponytail, in a style similar to C.

> "After Saesee left the area, he met with several of his gang-affiliated friends.  He told them what had happened, they got in his vehicle, and he drove them back to C.'s residence.  He drove by the residence, went to the end of the street and made a U-turn.  He turned his car's lights off and drove past C.'s residence slowly.  As he drove past, two shots were fired from his car, one of which struck Viscarra in the heart.  She later died at the hospital.

> "Officers responded quickly to Saesee's neighborhood.  He was located and arrested.  Officers found a gun nearby that matched the description provided by witnesses."[4]  (*Saesee*, *supra*, F054288.)

---

[3]     Our factual summary is taken from our decision in petitioner's direct appeal, which was before the trial court and is relied on by both parties in this appeal.

[4]     This portion of our prior factual summary was taken from the report and recommendation of the probation officer.  (*People v. Saesee* (Feb. 18, 2009, F054288) [nonpub. opn.] (*Saesee*).)

3.

Later in our opinion, we summarized the following witness testimony relating to the offenses:

> "Here, A.S. went to see her friend C. at the residence on Turner Street on May 8, 2006. At about 11:40 p.m., C. left her house and went to see a friend who lived a few houses away. C. was dressed in a red shirt. When C. was outside, A.S. heard her say, 'Don't disrespect me.' A.S. went outside to see what was happening and heard Saesee ask C. what gang she 'claimed.' A.S. heard C. tell Saesee she was not a gang member. Saesee said he was part of the O.T., and that the Turner Street neighborhood was O.T. land.

> "C. told Saesee, 'fuck OT's.' A.S. was standing next to C. when C. made this statement. Saesee became angry, jumped out of his car, and raised his arm as though he was going to hit C. A.S. jumped in front of Saesee to break up the encounter. Saesee remained angry and said, 'fuck Nortenas, fuck northerners.' A.S. watched Saesee reach for his right hip and saw a gun on his person. He pulled the gun out from his hip area. A.S. described the weapon as dark with a white handle and thought it might have been a .45-caliber handgun. Saesee said he wanted to shoot both C. and A.S.

> "Leo Loya watched the encounter from his nearby house. C. yelled for Loya to come over and Loya pushed Saesee into his vehicle. Saesee kept saying, 'No one is going to check me. You guys are just Nortena bitches, busters.' According to A.S., Saesee also said, 'I ought to kill you guys, off you guys.' Once Saesee was back in his car, C. and A.S. walked toward a neighbor's house. Loya got into the car with Saesee and Saesee drove over to where C. and A.S. were standing. Saesee asked C. where she lived and, against A.S.'s advice, C. told him. A.S. heard Saesee say he was going to come back and kill the two girls. C. heard Saesee say, 'Watch, bitch. Watch when I fucking come back.' C. interpreted that to mean he was coming back to shoot her. After making the threat, Saesee drove away.

> Raen See is Saesee's cousin and a codefendant in the case. See testified for the People at Saesee's trial. See said that on May 8, 2006, he was at some apartments on northwest First Street with Saesee and Loya. Saesee and Loya left the apartment building and returned a few minutes later. Saesee was angry when he returned because someone had said, 'fuck OT's.' See said Saesee told four of his male friends to get in the car. Saesee was still in the driver's seat and they departed. They returned 10 minutes later and Saesee was still seated in the driver's seat. The occupants

4.

of the car appeared nervous. One of the occupants handed See a revolver and some bullets and said there was something wrong with the firearm. See took the partially loaded firearm into his apartment and began to fix it. Police arrived about five minutes later and See was in possession of the gun and bullets." (*Saesee*, *supra*, F054288.)

On October 16, 2007, a jury convicted petitioner of first degree murder (§ 187, subd. (a); count 1), shooting from a motor vehicle (former § 12034, subd. (c); count 2), and possession of a firearm by a felon (former § 12021, subd. (a)(1); count 3). As to count 1, the jury found true the allegations that the murder involved the discharge of a firearm from a motor vehicle (§ 190.2, subd. (a)(21)); petitioner intentionally killed the victim while an active participant in a criminal street gang (§ 190.2, subd. (a)(22)); a principal intentionally discharged a firearm in the commission of the offense, causing great bodily injury (§ 12022.53, subds. (c), (d), (e)(1)); the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)); petitioner had served a prior prison term (§ 667.5, subd. (b)); and petitioner had sustained a prior felony conviction (§§ 667, subd. (a)(1); 1170.12). As to count 2, the jury found true the allegations that a principal intentionally discharged a firearm in the commission of the offense, causing great bodily injury (§ 12022.53, subds. (d), (e)(1)); the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)); petitioner had served a prior prison term (§ 667.5, subd. (b)); and petitioner had sustained a prior felony conviction (§§ 667, subd. (a)(1); 1170.12). As to count 3, the jury found true the allegations that the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)), petitioner had served a prior prison term (§ 667.5, subd. (b)); and petitioner had sustained a prior felony conviction (§ 1170.12).

On count 1, petitioner was sentenced to a term of life without the possibility of parole, plus a term of 25 years to life for the firearm enhancement. On count 3, petitioner was sentenced to a consecutive term of four years, plus a three-year term for the gang

allegation and a one-year term for the prior prison term enhancement. Sentence on the remaining count and enhancements was imposed and stayed pursuant to section 654.

On August 6, 2019, petitioner filed a petition for resentencing pursuant to section 1170.95. In the form petition, petitioner stated that a complaint, information, or indictment was filed against him that allowed him to be prosecuted under a theory of felony murder; he was convicted of first or second degree murder at trial; and he was not the actual killer, did not act with an intent to kill, and was not a major participant in the underlying felony or did not act with reckless indifference to human life in the course of the crime.

On August 14, 2019, the court summarily denied the petition with the statement, "DEFENDANT SHOOTER[.]"

This timely appeal followed.

## DISCUSSION

**I.    Senate Bill No. 1437 (2017-2018 Reg. Sess.) and Section 1170.95**

" 'Effective January 1, 2019, Senate Bill [No.] 1437 amended murder liability under the felony-murder and natural and probable consequences theories.' " (*People v. Daniel* (2020) 57 Cal.App.5th 666, 672, review granted Feb. 24, 2021, S266336 (*Daniel*).) The bill accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).) First, to amend the natural and probable consequences doctrine, " '[t]he bill redefined malice under section 188 to require that the principal acted with malice aforethought. Now, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)' " (*Daniel*, at p. 672; accord, *Gentile*, at pp. 842-843.) Second, to amend the felony-murder rule, the bill added section 189, subdivision (e):

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted,

6.

counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[5] (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

Finally, the bill "added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above." (*Gentile*, at p. 843.)

"Section 1170.95 lays out a process for a person convicted of felony murder or murder under a natural and probable consequences theory to seek vacatur of his or her conviction and resentencing. First, the person must file a petition with the trial court that sentenced the petitioner declaring, among other things, that the petitioner 'could not be convicted of first or second degree murder because of changes to Section 188 or 189.' (§ 1170.95, subd. (a)(3); see § 1170.95, subd. (b)(1)(A).) Then, the trial court must 'review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of th[e] section.' (§ 1170.95, subd. (c).) If so, the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and to resentence the petitioner on any remaining counts. (§ 1170.95, subds. (c), (d)(1).) At the hearing, the prosecution must 'prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (§ 1170.95, subd. (d)(3).) 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' (*Ibid.*)" (*Gentile, supra*, 10 Cal.5th at p. 853.)

"Since Senate Bill [No.] 1437 was adopted and its mechanism for retroactive application has come into play through the filing of section 1170.95 petitions, many questions have arisen about that process and percolated up through appeals from

---

[5] Additionally, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f); accord, *Daniel, supra*, 57 Cal.App.5th at p. 672, review granted.)

resentencing decisions." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 811, fn. omitted.)  Those questions pertain primarily to section 1170.95, subdivision (c) (hereinafter sometimes referred to as "subdivision (c)"), which "addresses the procedure by which a trial court determines whether the petitioner is entitled to an evidentiary hearing."  (*People v. Cooper* (2020) 54 Cal.App.5th 106, 114, review granted Nov. 10, 2020, S264684 (*Cooper*).)  Section 1170.95, subdivision (c) provides in full:

> "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor['s] response is served.  These deadlines shall be extended for good cause.  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

Courts of Appeal are divided on several questions arising under subdivision (c). Relevant here, the Courts of Appeal are split regarding when the right to counsel arises under subdivision (c).  Our Supreme Court has granted review to decide this question. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598 (*Lewis*).)  In the meantime, a court has held that the right to counsel attaches immediately upon the filing of a facially sufficient petition that includes all the information required under section 1170.95, subdivision (b).  (*Daniel*, *supra*, 57 Cal.App.5th at p. 673, review granted; *Cooper*, *supra*, 54 Cal.App.5th at pp. 109, 114, review granted.)  That court construed the first sentence of subdivision (c) to state a general rule, with the rest of the subdivision establishing a process for complying with that rule:  " 'Appoint counsel, if requested.  Wait for the prosecutor's required response and the petitioner's optional reply.  If the petitioner makes a prima facie showing, issue an order to show cause.' "  (*Cooper*, at p. 115.)

Other courts have read the two references to a "prima facie showing" in the first and fifth sentences of subdivision (c) as requiring two different prima facie reviews – one to determine whether the petitioner "falls within the provisions" of the statute and one to determine whether the petitioner is "entitled to relief" – with each review to occur at a different chronological point in time. (*Lewis*, *supra*, 43 Cal.App.5th at p. 1140, review granted; see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328-333, review granted Mar. 18, 2020, S260493 (*Verdugo*).) Under this reading of the statute, courts have concluded that a petitioner is entitled to counsel (as well as the other procedures provided for under subd. (c)) only after the trial court determines the petitioner has made the threshold showing required to satisfy the first prima facie review. (*Lewis*, at p. 1140; *Verdugo*, at p. 332.)

Courts of Appeal also are divided on the question of whether a trial court may look beyond a facially sufficient petition to determine whether a defendant has made a prima facie showing that he or she falls within the provisions of the statute. Our Supreme Court also granted review to decide this question in *Lewis*, *supra*, 43 Cal.App.5th 1128. In the meantime, some courts have held that a trial court may examine the petition, as well as the court's own files, the record of conviction, or an appellate court opinion from the petitioner's direct appeal. (*Lewis*, at p. 1138, review granted; see *Verdugo*, *supra*, 44 Cal.App.5th at p. 333, review granted.) Another court has held that a trial court may not rely on the record of conviction to deny a facially sufficient petition, and instead may only rely on the record of conviction to deny a petition "*after* deeming it facially sufficient, appointing counsel, and receiving briefing from the parties." (*Daniel*, *supra*, 57 Cal.App.5th at p. 677, review granted; see *Cooper*, *supra*, 54 Cal.App.5th at pp. 125-126, review granted.)

## II.    Petitioner is Ineligible for Resentencing

Petitioner contends the trial court erroneously denied his petition because the record does not establish that he was the actual shooter. However, even if petitioner was

9.

not the actual shooter, the jury's special circumstance findings establish that he intended to kill the victim. He is ineligible for resentencing on this basis. Even if the court erred in its determination, petitioner was not prejudiced, and he therefore is not entitled to reversal.

To be eligible for relief pursuant to section 1170.95, petitioner must not have been the actual killer, must not have acted with the intent to kill, and must not have been a major participant in the underlying felony who acted with reckless indifference to human life. (§§ 189, subd. (e), 1170.95, subd. (a)(3); see *Gentile*, *supra*, 10 Cal.5th at p. 842.) Here, the jury found true the special circumstances pursuant to section 190.2, subdivision (a)(21) and (a)(22), which impose a sentence of death or life without the possibility of parole for, respectively, a murder involving the discharge of a firearm from a motor vehicle and the defendant's active participation in a criminal street gang. To make such findings, the jury was required to find that petitioner intended to kill the victim. (§ 190.2, subds. (a)(21), (a)(22), (c).) The jury therefore made the findings necessary to sustain a murder conviction under section 189, as amended by Senate Bill No. 1437 (2017-2018 Reg. Sess.).[6] Petitioner is therefore ineligible for resentencing as a matter of law, and he was not prejudiced by the trial court's summary denial of his petition, even if that denial

---

[6]     Petitioner does not argue the trial court erred in relying on the record of conviction to summarily deny the petition. However, we acknowledge the issue of whether the trial court may consider the record of conviction in determining whether a petitioner has made a prima facie showing of eligibility for relief under section 1170.95 is currently pending before our Supreme Court. (*Lewis*, *supra*, 43 Cal.App.5th 1128, review granted.) In the meantime, however, the Courts of Appeal appear to be in an agreement that, at the very least, the trial court may rely on the record of conviction to "deny a petition *after* deeming it facially sufficient, appointing counsel, and receiving briefing from the parties" (*Daniel*, *supra*, 57 Cal.App.5th at p. 677, review granted), particularly where the court's review of that record is "limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion . . . ." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980.) We therefore consider the record of conviction in determining whether petitioner was prejudiced by the court's summary denial of his petition.

was based on an erroneous ground.  (See *Daniel*, *supra*, 57 Cal.App.5th at p. 676, review granted [the petitioner bears the burden of showing it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing]; see also *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Nonetheless, petitioner argues the special circumstance findings are insufficient to render him ineligible for resentencing.  He first argues the special circumstance findings at issue here do not require that the defendant intended to kill the victim, only that *someone* intended to kill the victim.  We disagree.  Section 190.2, subdivision (a)(21) provides:

> "The murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person or persons outside the vehicle with the intent to inflict death.  For purposes of this paragraph, 'motor vehicle' means any vehicle as defined in Section 415 of the Vehicle Code."

Section 190.2, subdivision (a)(22) provides:

> "The defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of Section 186.22, and the murder was carried out to further the activities of the criminal street gang."

Where the defendant is not the actual killer, these special circumstances apply only if the defendant, "with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree." (§ 190.2, subd. (c); accord, *People v. Fayed* (2020) 9 Cal.5th 147, 201-202 [considering murder for financial gain special circumstance pursuant to § 190.2, subd. (a)(1)].)  When read together, these provisions make clear that only " 'one who intentionally aids or encourages a person in the deliberate killing of another,' " in the manner or for the reasons described by the statute, is subject to the special circumstance punishment. (*Fayed*, at p. 202; accord, *People v. Allison* (2020) 55 Cal.App.5th 449, 460 (*Allison*).)

We therefore reject petitioner's argument that the special circumstances did not require the jury to find he intended to kill the victim.

Petitioner additionally argues we cannot determine that the jury actually found he had the intent to kill without knowing how the jury was instructed or how the case was argued. Again, we disagree. "If these kinds of findings did not bar defendants from relief under section 1170.95, it would be unclear how any prior factual findings could preclude relief under section 1170.95." (*Allison*, *supra*, 55 Cal.App.5th at p. 460.) Moreover, we *do* know how the jury was instructed in this case, as the jury instructions on both special circumstances were quoted in their entirety in our opinion in petitioner's direct appeal. (*Saesee*, *supra*, F054288.) There, we stated:

> "The trial court also instructed in CALCRIM No. 735 (special circumstances; discharge from vehicle) as follows:
>
>> " 'The defendant is charged with the special circumstance of committing murder by shooting a firearm from a motor vehicle.
>>
>> " 'To prove that this special circumstance is true, the People must prove that, one, someone shot a firearm from a motor vehicle killing Natividad Viscarra; two, the person who discharged the firearm intentionally shot at a person who was outside the vehicle; three, at the time of the shooting *the defendant intended to kill*.'
>
> "The trial court further instructed in CALCRIM No. 736 (special circumstances; killing by street gang) as follows:
>
>> " 'The defendant is charged with the special circumstance of committing murder while an active participant in a criminal street gang. To prove that this special circumstance is true, the People must prove that *the defendant intentionally killed Natividad Viscarra*; two, at the time of the killing, the defendant was an active participant in a criminal street gang; three, the defendant knew what members of the gang engaged in or have engaged in a pattern of criminal gang activity; four, the murder was carried out to further the activities of the criminal street gang.' " (*Saesee*, *supra*, F054288, italics added.)

These instructions confirm that the jury found petitioner intended to kill the victim.

12.

Because the jury found petitioner intended to kill the victim, petitioner is ineligible for relief as a matter of law. (See *Allison*, *supra*, 55 Cal.App.5th at p. 460.) Thus, to the extent the court erred in summarily denying the petition on the ground petitioner was the shooter, the error was harmless. (See *Daniel*, *supra*, 57 Cal.App.5th at p. 677, review granted; accord, *People v. Law* (2020) 48 Cal.App.5th 811, 826, review granted July 8, 2020, S262490 [any error in failing to appoint counsel was harmless because counsel would not have been able to demonstrate petitioner was eligible for resentencing].)

## DISPOSITION

The order is affirmed.